**Case No. 23-3682**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

◆

**SIERRA CLUB and APPALACHIAN VOICES,**
*PETITIONERS,*

v.

**TENNESSEE DEPARTMENT OF ENVIRONMENT AND CONSERVATION,**
*RESPONDENT,*

AND

**TENNESSEE GAS PIPELINE COMPANY, L.L.C.,**
*INTERVENOR-RESPONDENT.*

◆

On Petition for Review from the
Tennessee Department of Environment and Conservation's
§ 401 Water Quality Certification and ARAP Permit NRS 22.192 (July 21, 2023)

◆

**INTERVENOR'S EMERGENCY MOTION FOR CLARIFICATION THAT THE OCTOBER 11 STAY PENDING REVIEW IS DISSOLVED OR, IN THE ALTERNATIVE, TO IMMEDIATELY LIFT STAY PENDING REVIEW IN LIGHT OF THE COURT'S APRIL 4 OPINIONS AND JUDGMENTS (DECISION REQUESTED BY APRIL 21, 2025)**

◆

Scott Burnett Smith
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West, Suite 900
Huntsville, Alabama 35801
(256) 517-5100
ssmith@bradley.com

David A. Super
Ann D. Navaro
Bracewell LLP
2001 M Street, NW, Suite 900
Washington, D.C. 20036
(202) 828-5836
david.super@bracewell.com
ann.navaro@bracewell.com

*Counsel for Intervenor-Respondent Tennessee Gas Pipeline Company, L.L.C.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..........................................................................ii

INTRODUCTION AND RELIEF SOUGHT ...........................................1

ARGUMENT ..........................................................................................6

    I.      Sierra Club Has Already Lost On The Merits And The Alleged Harms On Which The Stay Was Based Have Been Shown To Be Hollow. ...........................................................................................7

    II.    Failure To Lift The Stay Will Cause Substantial Harm To TGP, TVA, And The Public Served By TVA. ......................................................9

    III.   The Stay Is Not In The Public Interest. ..................................................12

CONCLUSION .......................................................................................13

CERTIFICATE OF COMPLIANCE .......................................................15

CERTIFICATE OF SERVICE ................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re DeLorean Motor Co.*,
   755 F.2d 1223 (6th Cir. 1985) ................................................................7

*Doe 1 v. Thornbury*,
   75 F.4th 655 (6th Cir. 2023) .................................................................6

*Kassulke v. Foster*,
   972 F.2d 347 (6th Cir. 1992) ................................................................6

*Mason Cty Med. Ass'n v. Knebel*,
   563 F.2d 256 (6th Cir. 1977) ................................................................7

*In re MCP No. 165*,
   21 F.4th 357 (6th Cir. 2021), *rev'd on other grounds
   Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*,
   *OSHA*, 595 U.S. 109 (2022) .................................................................6

*NAACP v. Fed. Power Comm'n*,
   425 U.S. 662 (1976).............................................................................13

*Nexus Gas Transmission, LLC v. City of Green, Ohio*,
   757 F. App'x 489 (6th Cir. 2018)........................................................13

*Nken v. Holder*,
   556 U.S. 418 (2009)........................................................................6, 13

*Sierra Club v. FERC*,
   No. 24-1099 (D.C. Cir.).........................................................................5

*Tenn. Gas Pipeline Co.*,
    186 FERC ¶ 61,046 (2024)................................................................12

*Winterland Concessions Co. v. Trela*,
   735 F.2d 257 (7th Cir. 1984) ................................................................6

**Statutes**

Clean Water Act § 401 ................................................................................1

Clean Water Act § 404 ................................................................................1

## INTRODUCTION AND RELIEF SOUGHT

In this emergency motion, Tennessee Gas Pipeline Company, L.L.C. ("TGP") respectfully requests relief from the stay pending review that the Court entered last October given the Court's Opinions issued on April 4, 2025, disposing of this case (and a related case) on the merits.  Because time is of the essence, TGP respectfully requests that the Court rule on this motion by April 21, 2025.

This Court is now fully familiar with this case, involving the federally approved, roughly $185 million Cumberland Project ("Project"), a proposed 32-mile natural gas pipeline to provide transportation capacity for a new natural-gas-fueled combined cycle plant that the Tennessee Valley Authority ("TVA") is constructing in Tennessee ("TVA Cumberland Plant") to replace an existing coal-fired unit.

On April 4, 2025, this Court issued its Opinion and Judgment in this action brought by Sierra Club and Appalachian Voices (collectively "Sierra Club") challenging the Tennessee Department of Environment and Conservation's ("TDEC") issuance to TGP of a water quality certification for the Project under Section 401 of the Clean Water Act ("401 Certification").  Case No. 23-3682, R. 82-2 (attached hereto as Exhibit A).  That same day, the Court also issued its Opinion and Judgment in the action brought by the same Petitioners challenging the United States Army Corps of Engineers' (the "Corps") issuance to TGP of a permit for the Project pursuant to Section 404 of the Clean Water Act ("404 Permit").  Case No.

24-3831, R. 40-2 (attached hereto as Exhibit B).  In the two April 4 Opinions (collectively, the "Opinions"), this Court unanimously denied Sierra Club's two petitions for review, carefully addressing and rejecting each of Sierra Club's substantive challenges to the 401 Certification and 404 Permit, respectively.  The Judgments accompanying the Opinions state: "UPON FULL REVIEW of the record and the briefs and arguments of counsel, IT IS ORDERED that the petition[s] for review [are] denied."  R. 82-3; R. 40-3.

Roughly six months ago, on October 11, 2024, this Court issued an order—applicable to both of the above cases—granting Sierra Club's motion for a stay "to provide sufficient time for this Court to consider the merits of these petitions." R. 76-2 at 7; R. 15-2 at 7 (attached hereto at Exhibit C).  The stay prevented TGP from commencing construction of the Project—which had been scheduled to begin on October 15, 2024.  As a result of the stay, construction of the Project has already been delayed by six months.

As evidenced by the Opinions, the Court has now taken "sufficient time" to "consider the merits of these petitions" and has denied them.  TGP respectfully submits that, in light of the Court's Opinions, there is no legal or equitable basis for continuing the stay.  Accordingly, TGP seeks clarification that the stay is dissolved due to the Opinions or, in the alternative, requests that the stay be lifted immediately to allow Project construction to commence, thereby relieving the ongoing harm to

TGP, TVA, and the public served by TVA.  The basis to deem the stay dissolved or to lift the stay could not be clearer.[1]

First, in the Opinions, this Court has already thoroughly considered and rejected Sierra Club's arguments on the merits, so Sierra Club has no meaningful likelihood of success going forward, certainly not the "strong" likelihood of success needed to justify continuance of the stay.

Second, Sierra Club plainly will suffer no harm that could justify the stay due to Project-related construction activities because, in the Opinions, this Court has *already determined* that the activities of which Sierra Club complains were lawfully considered and authorized by TDEC and the Corps, respectively, and found to be of minimal and predominantly temporary impact.

In sharp contrast, the stay has already harmed TGP, TVA, and the public served by TVA, and that harm will grow with each passing day.  As TGP explained in opposing the stay (R. 12-1 at 17-20), the Project's construction commencement date of October 15, 2024, was carefully calibrated to allow TGP to meet the September 1, 2025, in-service date for the pipeline, which is only slightly more than five months from now.  Declaration of Kevin A. Mosley ("Mosley Decl.") ¶ 6 (attached hereto as Exhibit D).  Due to the six-month delay caused by the stay, the

---

[1] Because an identical stay order was issued in both Case No. 23-3682 and Case No. 24-3831, TGP is filing this motion to lift the stay in both cases.

construction schedule is now incredibly tight and will demand herculean efforts to provide TVA with natural gas transportation service as soon as possible. As explained below, due to restrictions protecting federally listed bat species along 12 miles of the right-of-way, if TGP cannot begin construction by April 28, 2025, then the Project will be further delayed to account for restrictions that go into effect on May 15, 2025, and end on August 1, 2025. Mosley Decl. ¶¶ 8-10. To advance construction while complying with these restrictions, TGP's construction schedule requires TGP to commence and complete this tree clearing work by May 14, 2025. *Id.* ¶¶ 9-11. TGP can only meet this requirement if TGP starts no later than April 28, 2025. *Id.* ¶ 10.[2] If TGP misses the May 14 deadline, the Project will likely be delayed into 2026 to accommodate the next available tree clearing window. *Id.* ¶ 11.

Finally, the public interest overwhelmingly favors lifting the stay. Two federal agencies—the Corps and the Federal Energy Regulatory Commission ("FERC")—as well as the governing state agency—TDEC—have already found that the Project complies with all applicable legal standards and, as to the conclusions of TDEC and the Corps, this Court has expressly confirmed that the agencies lawfully carried out

---

[2] The U.S. Fish and Wildlife Service has determined that limitations on tree clearing are only needed from May 15 to July 31 along a 12-mile portion of the Project's right-of-way. Mosley Decl. ¶ 9. After May 14, TGP would be precluded from engaging in these tree clearing activities again until *August 2025*, only one month before the Project was originally supposed to be in-service. *See id.* ¶¶ 6, 9.

their duties.[3]  In short, the agencies have done their job, as has this Court.  The Project is one that *should* be supported by all stakeholders, as it will allow TGP to provide natural gas transportation service to TVA's new gas-fired power plant, which will, in turn, replace an aging coal-fired unit and allow TVA to provide much-needed electric supply needs to thousands of Tennesseans.  Declaration of Samuel B. Vinson ("Vinson Decl.") ¶¶ 3-6 (attached hereto as Exhibit E).  This Court should clarify that the stay is dissolved due to the Opinions or, in the alternative, lift the stay and allow this beneficial—and now thoroughly vetted and lawfully approved—Project to commence without further delay.

## REQUEST FOR EMERGENCY CONSIDERATION

In order for TGP to start tree clearing activities on April 28, 2025—the last possible date that would allow completion of that task by the deadline of May 14, 2025—TGP respectfully requests that Sierra Club be ordered to respond to this Emergency Motion by April 14, 2025, and that the Court render its decision by April 21, 2025.

In pre-filing consultations, counsel for Sierra Club represented that Sierra Club does not oppose the expedited schedule proposed by this Motion.  Counsel for

---

[3] On March 4, 2025, the D.C. Circuit heard oral argument on Sierra Club's challenge to the Certificate of Public Convenience and Necessity issued by FERC, but the Court has not issued its decision.  *Sierra Club v. FERC*, No. 24-1099 (D.C. Cir.).  Notably, Sierra Club did not seek a stay of the FERC certificate in the D.C. Circuit even though it is FERC alone that authorized construction of the Project.

Sierra Club was unable at this point to provide Sierra Club's position on whether the stay should be lifted. Counsel for TDEC represented that TDEC does not oppose lifting the stay. Counsel for the Corps represented that the Corps does not oppose lifting the stay.

## ARGUMENT

In determining whether a stay is still legally and equitably supportable, this Court should reassess the same four-factors it used to grant a stay. *See In re MCP No. 165*, 21 F.4th 357, 369 (6th Cir. 2021), *rev'd on other grounds Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*, *OSHA*, 595 U.S. 109, 116 (2022) (citing *Nken v. Holder*, 556 U.S. 418, 426-27 (2009) in deciding whether to lift stay instituted by court of appeals); *see also Doe 1 v. Thornbury*, 75 F.4th 655, 656-57 (6th Cir. 2023) (applying *Nken* factors when deciding whether to dissolve injunction instituted by district court). Under that standard, the Court should assess whether (1) Sierra Club is likely to succeed on the merits of an attempt to overturn the Opinions; (2) whether Sierra Club would be irreparably injured if the stay were lifted; (3) whether continuing the stay will cause harm to TGP, TVA, and the public served by TVA; and (4) where the public interest lies. *In re MCP No. 165*, 21 F.4th at 369 (citing *Nken*, 556 U.S. at 426). In short, this Court should consider whether, in light of the Opinions, the "changed circumstances make the continuation of the injunction inequitable." *Kassulke v. Foster*, 972 F.2d 347 (6th Cir. 1992) *(citing Winterland Concessions Co.*

-6-

*v. Trela,* 735 F.2d 257, 260 (7th Cir. 1984)).  Here, TGP submits that the "changed circumstances" due to the Opinions overwhelmingly support clarifying that the stay is dissolved or issuing an order lifting the stay.

**I.    Sierra Club Has Already Lost On The Merits And The Alleged Harms On Which The Stay Was Based Have Been Shown To Be Hollow.**

Sierra Club has no likelihood of success **on the merits** because it already lost **on the merits**.  This Court has squarely rejected all of Sierra Club's arguments and issued Judgments ordering that Sierra Club's petitions for review are denied.  Sierra Club may choose to attack this Court's Opinions and Judgments but it strains credulity to suggest that Sierra Club has a sufficient likelihood of success in any such challenge to warrant the extraordinary relief of a stay.  After all, a "showing of a mere 'possibility' of success" is insufficient to justify the *imposition* of a stay, and Sierra Club must demonstrate "'strong or substantial *likelihood* or *probability* of success on the merits.'"  *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228-29 (6th Cir. 1985) (quoting *Mason Cty Med. Ass'n v. Knebel,* 563 F.2d 256, 261 n 4 (6th Cir. 1977) (emphasis in original)).  Now that this Court has *decided* the merits and ruled against Sierra Club, Sierra Club can hardly be said to have a "strong or substantial likelihood or probability of success on the merits" sufficient to support a continuation of the stay (*see id.*), particularly in light of the harms the stay is inflicting on TGP, TVA, and the public served by TVA, as discussed below.

Further, Sierra Club cannot credibly point to any harms it would suffer if the stay is lifted because this Court, in the Opinions, has already considered and approved the reasoned judgments of TDEC and the Corps that the harms alleged by Sierra Club will not occur.[4]  For example, Sierra Club alleged that "TGP's proposed stream crossings threaten to cause significant permanent impacts to the streams in the Pipeline's path."  R. 64-1 at 21.  But this Court found that Sierra Club failed to demonstrate that TDEC's assessment of TGP's waterbody crossing methods violated the Administrative Procedure Act, R. 82-2 at 14, and the Court rejected Sierra Club's waterbody crossing arguments.  *Id.* at 15.  Similarly, this Court found that Sierra Club's arguments regarding the Corps' assessment of waterbody crossings "are belied by the record evidence and the Corps' reasoned explanation."  R. 40-2 at 10; *id.* at 11.

Further, Sierra Club also claimed harm due to alleged increased sedimentation caused by stream crossings.  R. 64-1 at 22.  But this Court found that Sierra Club's contentions about sedimentation were "belied by the administrative record," including the numerous conditions TDEC imposed on TGP that "would result in no more than de minimis degradation due to sedimentation."  R. 82-2 at 17.  Similarly,

---

[4] The harms Sierra Club alleged in its motion to stay filed in this case and in the companion stay motion filed in Case No. 24-3831 were essentially identical.  *See* R. 64-1 at 23 (stay motion in Case No. 23-3682) & R. 9-1 at 19-23 (stay motion in Case No. 24-3831).

this Court referenced TGP's commitment to utilize sedimentation controls and found "that the Corps properly provided support for its suspended particulates and turbidity conclusion."  R. 40-2 at 14.

Sierra Club also complained about alleged harms due to in-stream blasting. R. 64-1 at 21.  But the Court found that both TDEC and the Corps properly addressed those allegations in compliance with the agencies' respective obligations, and the Court rejected Sierra Club's arguments.  R. 82-2 at 15-16; R. 40-2 at 11-12.

In short, as this Court concluded in the Opinions, the alleged harms on which Sierra Club based its request for a stay were fully and properly addressed by TDEC and the Corps and such alleged harms are not harms at all.  They certainly do not warrant the extraordinary imposition of a stay at this point.

## II.  Failure To Lift The Stay Will Cause Substantial Harm To TGP, TVA, And The Public Served By TVA.

TGP will continue to suffer substantial harm if the stay is not lifted.  If TGP is not able to begin clearing trees from the 12-mile section of the pipeline's right-of-way by April 28, 2025, then TGP will be further delayed in placing the Project into service.  TGP will be required to wait until August 1, 2025, nearly four months from now, to clear the right-of-way.  Mosley Decl. ¶¶ 9-11.  Such a lengthy delay will result in tremendous cost to TGP—which TGP has been experiencing since the stay was issued in October 2024—as well increased risk to TVA, which has nearly

completed construction of the TVA Cumberland Plant. Mosley Decl. ¶¶ 11-12; Vinson Decl. ¶¶ 7-8.

The pipeline construction process begins with the clearing of trees from the right-of-way, which must be completed prior to each crew's completion of grading, ditching, stringing, and installation of the pipeline. Mosley Decl. ¶ 7. Once trees are cleared from each segment of the right-of-way, subsequent construction activities can continue on that segment. *Id.* Special Condition 10 of the 404 Permit issued by the Corps provided that tree clearing could occur between October 15 and March 31 to avoid impacting federally listed bat species. *See* Case No. 24-3831, R. 27 at App-0007; Mosley Decl. ¶ 9. However, this timeframe was based on guidance from the U.S. Fish and Wildlife Service, which has been updated since the Corps issued the 404 Permit. Mosley Decl. ¶ 9. The U.S. Fish and Wildlife Service has since determined that limitations on tree clearing are only needed from May 15 to July 31 along a 12-mile portion of the Project's right-of-way. *Id.*

Based on this updated guidance and the U.S. Fish and Wildlife Service's subsequent determination that the tree clearing window extends to May 14, TGP has submitted a modification request to the Corps to modify Special Condition 10 of the 404 Permit to authorize a tree clearing window of August 1 to May 14 for the portion of the Project pipeline route subject to this restriction. *Id.* After May 14, TGP would be precluded from engaging in tree clearing activities in the 12-mile section of the

-10-

pipeline again until *August 2025*, only one month before the Project is supposed to be in-service. *Id.* ¶¶ 6, 9-11. TGP has requested that the Corps act on the permit modification request promptly. *Id.* ¶ 9. TGP will also coordinate with FERC regarding the new tree clearing window and variance approval needed in light of the U.S. Fish and Wildlife Service's updated guidance. *Id.*

If TGP begins construction, including tree clearing, on April 28, 2025, it can complete clearing of trees in the section of the right-of-way subject to this window by May 14, the end of the current tree clearing window. Mosley Decl. ¶ 10. This would allow the Project to proceed with subsequent construction activities along this section of the right-of-way throughout the summer. *Id.* ¶ 7 (explaining that pipeline construction is performed sequentially, beginning with tree clearing). However, if the stay remains in place and TGP is unable to complete this critical first step of construction between April 28 and May 14, TGP would be forced to wait until August 1 to undertake this clearing activity. *Id.* ¶¶ 9-11. Such a delay will result in tremendous costs to TGP, which TGP has been experiencing throughout the pendency of the stay. *Id.* ¶ 11. Requiring TGP to wait until August 1 for this clearing will also increase the risk posed to TVA and its customers in Tennessee. Vinson Decl. ¶¶ 7-8, 10. TVA's construction of the TVA Cumberland Plant is roughly 75 percent complete, but TVA cannot retire its aging coal facility and commission the TVA Cumberland Plant until the pipeline Project is complete. *Id.*

Additional delay in commencing Project construction also increases the risk of TGP losing talented and experienced construction personnel, having specialized equipment (such as horizontal directional drills) moved to another project, and having to recover crew productivity, depending on the length of the delay that may lead to construction activities in winter months.  Mosley Decl. ¶ 12.  Every day that passes while the stay remains in place causes harm to both TGP and TVA.  This *real and ongoing* harm to TGP and TVA dwarfs the *alleged* harm claimed by Sierra Club in its stay motion, which was based on Sierra Club's inaccurate characterization of the agencies' conclusions and the facts, and the Court has now determined that Sierra Club's allegations lack any merit.

## III.    The Stay Is Not In The Public Interest.

Allowing the stay to remain in place is not in the public interest.  The Project will allow TGP to provide natural gas transportation service to TVA's new gas-fired power plant, which will, in turn, allow TVA to retire an aging coal-fired unit and provide electric supply needs to thousands of Tennesseans. Vinson Decl. ¶¶ 4-6.  Moreover, FERC has expressly determined that the Project is in the public interest because it would enable TGP to serve TVA's new natural gas-fired power plant, demonstrating a need for the Project. 186 FERC ¶ 61,046, ¶¶ 77-78.

This Court has acknowledged that the public interest is served by "expeditious completion of [a] pipeline," particularly where FERC "'carefully considered the

pipeline and concluded that it will fulfill the goals detailed by Congress.'" *Nexus Gas Transmission, LLC v. City of Green, Ohio*, 757 F. App'x 489, 495 (6th Cir. 2018) (cleaned up) (upholding district court's conclusion that construction of a pipeline project carefully considered by FERC was in public interest for purpose of applying *Nken* factors). Such is the case here, where FERC has concluded the Project is in the public interest, numerous federal and state agencies have evaluated the Project's impacts, and this Court has concluded that the Project's approvals were properly issued in accordance with the law. The public interest also supports honoring Congress's mandate in the NGA that the Nation continue to benefit from "the orderly development of plentiful supplies of ... natural gas at reasonable prices." *NAACP v. Fed. Power Comm'n*, 425 U.S. 662, 669-70 (1976). The stay entered by this Court on October 11 is no longer supportable under *Nken* or any other standard and continuing to prevent TGP from moving forward with constructing the Project is not in the public interest.

## CONCLUSION

For the foregoing reasons, TGP's emergency motion should be granted and the Court should clarify that the stay is dissolved due to the Opinions or, in the alternative, enter an order lifting the stay and permitting TGP to commence construction by April 28, 2025. Because time is of the essence, TGP respectfully requests that the Court rule on this motion by April 21, 2025.

Dated:   April 10, 2025

Scott Burnett Smith
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West, Suite 900
Huntsville, Alabama 35801
(256) 517-5100
ssmith@bradley.com

Respectfully submitted,

 */s/ David A. Super*
David A. Super
Ann D. Navaro
BRACEWELL LLP
2001 M Street, NW, Suite 900
Washington, D.C. 20036
(202) 828-5836
david.super@bracewell.com
ann.navaro@bracewell.com

***Counsel for Intervenor-Respondent***
***Tennessee Gas Pipeline Company, L.L.C.***

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 27, I certify that this opposition complies with the applicable type-volume limitation. According to the word count in Microsoft Word, there are 3,336 words in this motion.

Dated:  April 10, 2025

  */s/ David A. Super*
*Counsel for Intervenor-Respondent*
*Tennessee Gas Pipeline Company, L.L.C.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of April 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.


   */s/ David A. Super*      
*Counsel for Intervenor-Respondent*
*Tennessee Gas Pipeline Company, L.L.C.*